May it please the court. My argument this morning will focus on the counsel waiver issue that is raised in our brief. During the Ferretta inquiry in this case, my client Demar Rhome made the following bizarre, if not delusional, statements in response to the judge's questioning. First, that jail guards were having sex with his co-defendant, who was also the state's star witness, and that the guards were stealing his mail. Second, that his attorneys, Walter Peele and Mr. Aharkey, had been actively trying to prevent him from attending court hearings, that they were in collusion with the prosecutor, and that they were racist. And third, that he had the exceptional ability, essentially, to represent himself, and as he put it, he had the mass amount of sophisticated evidence supporting his defense. The judge, in this case, instead of probing into these questions, or these comments made by Mr. Rhome, instead conducted this hearing through a series of leading questions, and in fact, interrupted Mr. Rhome when he would make these bizarre, if somewhat delusional, statements, and went through a standard Ferretta colloquy that you would conduct with someone who was not suffering from a mental illness, until he obtained yes answers, and answers that I understand to all of the questions the trial judge thought were relevant. The Washington Rhome's mental health history, and to inquire further, he was not required to do so, and his failure was not an abuse of discretion. This opinion is an acknowledgment that Judge Kessler failed to consider and explore Rhome's mental health condition in determining whether Rhome actually did understand the significance and the consequences of his actions. This is made clear in the state Supreme Court opinion when they address ground three of the personal restraint petition, and this is at ER 44 and 45. They begin that discussion by stating a trial court may consider a defendant's mental health history and status when competency has been questioned, and they're using competency in a generic sense, even where the defendant has been found competent to stand trial. Then they go through what Judge Kessler did, the colloquy, the questions he asked, the warnings he gave, and then they conclude by saying, while there is no abuse of discretion here, it bears repeating that nothing precludes trial courts from inquiring further into a defendant's ability to address their concerns are present. The Supreme Court made an objectively unreasonable application of well-established Supreme Court law when it found that Judge Kessler was not required to probe into the history and circumstances of Mr. Rhome. Let me ask you to focus on that, please. So where, I mean, Ferreira says the judge has to satisfy himself a waiver. It is made with eyes open, and in the last 40 years, there have been other precedents from the Supreme Court touching that right. But which case or what precedent do you rely upon that you think is unreasonably, objectively unreasonably applied? Well, I think it starts all the way back with Johnson v. Zerps, which requires in a counsel waiver situation that the court is required, that the decision depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Now, the more specific case is the more recent case from the 1990s, Godinez v. Moran. And Godinez is the case where the Supreme Court, U.S. Supreme Court said, there's no different standard for competency for waiving counsel, for entering a plea, or for trial. But at the end of the opinion, Justice Thomas was very careful to remind other courts and practitioners that there is a heightened responsibility on trial courts which consider a request for self-representation from a defendant who is competent but has mental health problems in his history. That's Mr. Rome. They go on to say the trial court has the serious and weighty responsibility to determine whether the defendant actually does understand the significance and consequences of the decision to waive counsel. So it's not about the advice given to the defendant. It's about what the defendant understands. The Supreme Court has not given trial courts discretion in this case to say, well, I'm just going to go through a colloquy, but I have this information about the person's mental health problem, and I really don't have to probe it. I don't have to go into that. But if I could ask you, though, in terms of looking, I agree with you that really the colloquy is not necessarily the words that the judge says, but the responses that the defendant has in terms of evidencing, understanding, and any sort of hesitation in their agreement or their desire to waive counsel. But ultimately, isn't that when you read the entire transcript, that's what the defendant indicated? At the end, he says, I know what I'm up against. And he acknowledges that he can follow the rules of evidence. He said that he's practiced law for two years. I'm not quite sure what he meant by that. And it's his paranoia or his delusions as to what was happening. But interspersed between that, he clearly responds to all of the questions. What do we make of that? He does respond to the questions. He says he understands. He says that repeatedly. In fact, he makes grandiose statements about his abilities. But what the court has to determine, and this is clear from Godinez, is that he actually understands and has an understanding of the peril that he is in, not just the words he's speaking. And what Godinez also says is when there's evidence that the person has a mental health problem, a mental illness, the court has a big responsibility to probe further. There's nothing in the cases that limits a judge to just considering the colloquy. In this case, unfortunately, the competency hearing that had occurred earlier was conducted by a different judge. And Judge Kessler, while aware of the fact of a competency hearing, was not privy to many of the details that were presented at that competency hearing. And what I would suggest is when it says the court has a duty to probe, the duty to probe means to find out, well, what is it that's wrong with this guy? What is the nature of his mental illness and how does it relate to the issue I'm deciding today? Not his ability to assist counsel, his an intelligent understanding of his peril and what he's doing. And that failure to learn about that history in detail is one of the things that is an error here. There are other things that the judge did that I think go to the issue of the... Counsel, could I interrupt you before you leave this point? Because I just would like a little help with it. What is it this judge knew about that history? And what tipped him off that there was more that he should learn? Well, the competency hearing was completed on June 8th in front of Judge Canova. On June 9th, they appear in front of Judge Kessler at a hearing where Mr. Rome wants a new lawyer. Yes, I understand. That lawyer at that time, the lawyers at that time give Judge Kessler a very thumbnail sketch of what happened at the competency hearing. Right. So that's actually the genesis of my question. So what tipped this judge off? You're asking the judge to do more, to look deeper at this FARETA hearing. I think there's two things. One, assuming he remembered what was stated at the June 9th hearing when he conducted the FARETA hearing three months later on August 30th, Rome's statements during the FARETA hearing, what are apparently delusional statements about guards having sex with the witness, the main witness, stealing his mail, and tying that to his reason for why he wants a new lawyer. At a minimum, Judge Kessler should not have interrupted and explained to him how those concerns relate to his decision to proceed without counsel. He should have also made further inquiry of what the nature of the mental problem was and how that might interfere with the ability to make that knowing and intelligent waiver. And in fact, had he done so, he would have learned that at the competency hearing, Walter Peel, the first lawyer, gave the opinion that Rome was unable to rationally receive information, process it, react to it, and rationally attach significance to things he is told by other people. Did he know that? He did not know that. Has the Supreme Court said he's required to read that report or ask about that report? I mean, I understand the standard that you're up against. The Supreme Court requires a thorough and probing inquiry. In fact, I think the Von Moltke decision, which I cite in my brief in 1948, Supreme Court decision, did not deal with a mentally ill client, but they talk in those terms. I think there were at least two circuit opinions that I've cited, United States v. Cash, which is not an AEDPA case, dealing also with an individual who had a personality disorder, a severe personality disorder, really talked about those issues of the judge probing and emphasizing, again, that it's not the questions, it's the actual understanding. And Counsel, you're over your time, so I'm going to have to ask you to conclude your argument. You did not, you know, save time for rebuttal, but our questions kept you going quite a bit, and so I'm going to give you an extra minute for rebuttal so we can get your perspectives after the Attorney General argues. Thank you, Your Honor. Thank you, Counsel. Okay, Mr. Sampson. May it please the Court, John Sampson, Assistant Attorney General for the District Court. Mr. Rome's counsel is now arguing, is essentially the claim that he had raised in the State Supreme Court and in the District Court, but then abandoned when he filed his opening brief. He made a claim below, in the State Court and in the District Court, that under Indiana v. Edwards, the trial judge had an obligation to not only inquire into whether Mr. Rome understood he had a right to counsel, understood what he was giving up by the right to inquire into Mr. Rome's competency to plead counsel, or to waive counsel before he waived counsel. That is a claim that he has abandoned, and I would submit that it's not proper for him to pursue it at this point. But even if he did pursue it, that is a claim that requires the creation of a new rule, and it requires that it's not based on the holding of the Supreme Court. The Supreme Court in Edwards, which was issued after Mr. Rome's judgment became final, said a trial judge may inquire into whether the mental illness affects his ability to represent himself, but he's not required to do so. So Mr. Rome is asking this court to go even beyond Edwards v. Indiana. In this case, this was not simply a leading question where the defendant answered yes or no. The defendant actually engaged in some in-depth conversations with the judge. The defendant told the judge, I am charged with first-degree murder. The defendant told the judge, this is a Class A felony. The defendant was able to recall a prior hearing that he had with the judge the first time he indicated he had wanted to proceed pro se, where he had told the judge, I have studied the law in the past. He said in the hearing where he actually waived counsel, as I told you before, I have studied law in the past. He told the judge there was only one charge of murder. When the judge asked the prosecutor, are you going to add any charges, the defendant told the judge, there's only one charge because there was only one victim who was killed. The defendant said, I understand I may not be able to win an appeal. I understand I could possibly get convicted of murder. I understand that. That's at excerpt record 302. The judge warned Mr. Rome that he was making a bad decision, that the judge was a lawyer, and if he had been charged with a crime, he would hire his own lawyer. During the first hearing, Mr. Rome actually indicated, you're a judge and a lawyer? I didn't know that. Then in the second hearing, when the judge repeated that warning, he said, I understand that. The judge complied with all that was required of him under Supreme Court case law, under Ferretta v. California and made a knowing and an intelligent waiver of his right to counsel. The state Supreme Court affirmed that. That state Supreme Court decision was not an unreasonable application of then existing Supreme Court precedent. For that reason, habeas relief must be denied. I have a question for you. This may be off what you've thought about, so if you can't answer it, don't worry. But, of course, the state puts a lot of stress on AEDPA and on the idea that even if there's some problem here under a rule argued by appellant, if it's not a rule set by the Supreme Court, even if it was a rule that our Ninth Circuit set, that we couldn't give relief in a habeas case. My question is, though, if you just looked at this Ferretta colloquy alone without the AEDPA lens, like if this case was coming up to us from a federal district court, would you say the in the judge's non-response or response to some of the rather off-the-wall statements that were made by Mr. Warren? Your Honor, I would submit that even if this was on direct review from the district court, this would still be an adequate colloquy. Mr. Rome did make some strange comments. He hadn't studied law for two years, right, counsel? Well, Your Honor, I think what he was referring to was as a jailhouse lawyer, because this was not his first time in the system, he had studied law the way a jailhouse lawyer would study law. He wasn't saying, I went to law school for two years. Okay, so I shouldn't have interrupted because I was happier with Judge Gould's premise, which is that there were some off-the-wall statements. Why don't you take it from there and answer the question? I'll stay out of your way. Yes, Your Honor. I think what Dr. Durham pointed out in his testimony in the competency hearing kind of addresses this issue, and he pointed out, and this is that excerpt from Record 144, there's a difference between a bizarre and a non-bizarre delusion. A bizarre delusion is one that has no chance of being at all possible in reality. A non-bizarre is one that could possibly occur, although it most probably did not occur. And his examples of a bizarre one would be when you're born, there's a microchip put in your head, and that will determine how you grow up, and aliens are controlling it. A non-bizarre is one that could actually happen, and unfortunately, a female prisoner may have sex with guards. There are occasions when those are non-bizarre statements he was making. And I would submit that judges hear those statements more often than not, that an inmate standing trial will get up and complain about his conditions of confinement, or complain about things that are occurring, or complain about not having a male. And what the judge was focused on was not those conditions and not possible defenses to the trial, but do you understand you have the right to an attorney? Do you understand the dangers of giving up that right? And the judge would ensure that he understood he would be held to the rules of the court, and Mr. Rome said, I have a copy of those rules. I understand they apply. I understand I have to make objections. Okay, but isn't Mr. Rome's counsel point, though, under Indiana v. Edwards, that there was enough in the record to indicate that he may be of such a degree of mental illness, that he might be competent to stand trial, but inquiry had to be made whether he was sufficiently able to represent himself. And so he's saying he's asking him the standard Faretta questions that we all ask defendants when they say they want to waive their right to represent themselves. Did he need to go further than that is really the issue? Well, Your Honor, under the Edputt lens, no, because that is not a rule that's clearly established. But I would submit, even if this court were considering a federal prosecution, no, it's not something he had to go forward. He did have a finding by another judge that he was competent to stand trial. And the focus in that competency hearing was not did he understand the proceedings against him, but could he assist his counsel? Right. But was he severely mentally ill where he couldn't represent himself? Right. And we already had a judge finding a fact that he could assist his counsel. And the Judge Canova pointed out there's a difference between his ability to assist counsel and his willingness to assist counsel. And he was the person who was not willing to assist counsel. And I would submit that, yes, Mr. Rome, looking at the trial transcript, asked some very strange questions and made some strange objections. But those, I submit, go more to his skill as a practitioner and not to his rational mental state. Counsel, before you leave the podium, can I just ask, I think I'm remembering correctly, but I'd like you to correct me if I'm wrong. His IQ was measured twice, once at 49 and once in the low 70s. Is that right? Yes, Your Honor. Okay. And there's some suggestion in the record that he may have not exerted his best efforts on the IQ test. But my question is, was that allegation made as to both IQ tests? I think it was made as to the second IQ, but I am not 100% certain on that, Your Honor. But I think the indication was there was an agreement. He's not a very intelligent person. Whether he is mentally retarded or borderline mentally retarded, or whether he is above that level, that was kind of, I think the statement by the mental health professionals that he may have actually been able to score higher if he wanted to. I think that went to the second test, but I'm not 100% certain. And the second test was the lower one? I think the second test was the higher one. But again, I'm sorry. But it's not your recollection that that comment or that suspicion went to both tests? I don't believe so. Okay. And then my last question on this is that at the Ferreta hearing, did the judge know about those IQ tests? I can't say that he had specific knowledge of those IQ tests. I know that he had knowledge that Judge Canova had found him to be mentally competent. But whether he knew about the specifics of the IQ test, I do not know. I do know that the State Supreme Court had all that information before them when they rolled on the claim. Yes. Thank you. And for the reasons I've already argued in our brief, I would ask that the court affirm the district court. Thank you. Thank you, Mr. Sampson. Thank you, Your Honor. One point I think I need to make that's absolutely clear. I think it's both misled Mr. Sampson and perhaps the court. This is not a claim under Indiana v. Edwards. We have abandoned the Indiana v. Edwards claim. I think the existence of Indiana v. Edwards helped to confuse things, but that we clearly raised a separate issue in the PRP. It was the third ground for error that dealt solely with the question of knowing an intelligent waiver of counsel. When the Supreme Court dealt with that issue, I believe they became confused with the Indiana v. Edwards case, which held that assuming the person's competent, assuming there's a knowing and intelligent waiver, they could still impose counsel on it. You could get the discretion to impose counsel on a defendant who they thought was not mentally able to represent himself. This is a different question, and that's where the Supreme Court here got it wrong. The trial court does not have the discretion to ignore the defendant's mental illness in making the determination whether there's a knowing and intelligent waiver of counsel. The discretion does not apply in that circumstance, and that's where it's an unreasonable application of well-established U.S. Supreme Court case law. Thank you, counsel. We congratulate both counsel on fine arguments, and the case of Rome v. Fraker shall be submitted. So thank you both again.
judges: Kobayashi, Gould, Christen